# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **MICHELLE YVETTE DURAND,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | **Case No. CV-12-S-4181-NE** |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Michelle Yvette Durand, commenced this action on December 26, 2012, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly evaluated the medical opinions in the record, and that he improperly applied the Medical-Vocational Guidelines ("grids") to claimant's claim. Upon review of the record, the court concludes that these contentions lack merit, and that the Commissioner's ruling is due to be affirmed.

**A.     Medical Opinions**

Social Security regulations provide that, in considering what weight to give *any* medical opinion, the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments."). Generally, the opinion of an examining source is entitled to more weight than the opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1). Additionally, the opinion of a specialist generally is entitled to more weight than the opinion of a non-specialist. 20 C.F.R. §

404.1527(c)(5).  Finally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner."  20 C.F.R. § 416.927(e).

Claimant asserts that the ALJ should have given more weight to the opinion of Dr. Keith Anderson, a Doctor of Osteopathic Medicine specializing in physical medicine and rehabilitation who examined claimant on August 20, 2012, and less weight to the opinion of Dr. Burgin Dossett, an internal medicine doctor who never examined claimant but who testified as a medical expert during the September 6, 2012 administrative hearing.

Dr. Anderson conducted a single clinical examination of clamant on August 20, 2012.  Claimant complained of neck pain, cramping sensations and numbness in her arms and hands, low back pain radiating into the hips and legs, and thoracic pain.  She had surgery for a herniated disc in her neck in 2007, which improved her pain, but at the time of the examination, she had a new herniated disc at C5-C6 and could not afford additional surgery.  Dr. Anderson's neurological examination revealed symmetrical muscle stretch reflexes, full strength, intact sensation, and positive Tinel's signs over both carpal and cubital tunnels.  The evaluation of claimant's spine revealed a decreased range of motion in the cervical region, multiple tender points in

the upper thoracic region, level pelvic height, decreased range of motion in the lumbar region with increased pain upon movement, unremarkable gait pattern, and no spasms.[1]  Dr. Anderson stated the following in summary of plaintiff's condition:

> We have a 46-year-old white female who has herniated disc at C5-C6 with previous surgery at C6-C7 and chronic neck pain as well as degenerative joint disease of the lumbar spine with chronic back pain. We will try some different medications to see if we can help decrease [t]he symptoms.[2]

Dr. Anderson also stated, "At this point in time I do not feel this patient can hold out productive employment because of her chronic pain syndrome.  Hopefully we can get it under better control."[3]

The ALJ afforded Dr. Anderson's assessment only little weight, because

> the statement proffers an opinion on disability that is properly reserved for the Commissioner as it does not offer any functional assessment of the claimant's ability to perform any number of work-related activities. Additionally, the undersigned notes that Dr. Anderson did not review the claimant's previous medical records prior to offering his conclusionary opinion after only a single office visit.  Further records from that office visit document only physical examination findings of tenderness in the paraspinal muscles and some decreased range of motion in the lumbar and cervical spine.  The undersigned notes that these findings are not consistent with previous normal examination findings throughout the record and do not support the doctor's opinion.[4]

On the other hand, the ALJ gave great weight to the opinion of Dr. Dossett, the

---

[1] Tr. 744-46.

[2] Tr. 746 (alteration supplied).

[3] Tr. 744.

[4] Tr. 18-19.

independent medical examiner. Dr. Dossett responded to medical interrogatories submitted by the Social Security Administration on May 18, 2012. Dr. Dossett did not personally examine claimant, but instead reviewed the records submitted to him by the Commissioner.[5] He indicated that there was objective medical evidence to allow him to form opinions about the nature and severity of claimant's impairments, but such evidence was sparse.[6] When asked to describe claimant's impairments, Dr. Dossett stated:

> The impairments that this patient has that are established by evidence include: cervical disc protrusion treated in 2007 with discectomy and fusion of the cervical spine at that level (C6/7). She now has evidence of disc protrusion at C5/6 but this does not appear to be particularly severe or severe enough to be causing much in the way of symptoms. . . . She has apparently had continued symptoms involving the left arm and hand since the cervical surgery in 2007, but was able to work and at one point said she felt great after the surgery. She subsequently did complain of some symptoms with the left upper extremity. She also has lesions in other areas of the back including the thoracic spine and lumbar spine that do not appear to be terribly severe, although may well be producing some symptoms, but no evidence of impairment of function or limitation of motion of these areas of the spine, and no evidence of neurological sequelae from these abnormalities. . . . The evidence for all of these are contained in multiple x-rays and MRIs in the record and various clinical examinations including the exam done by Dr. John Howard Lowry on May the 20th 2011. Except for specific exams by her neurosurgeon and by her obstetricians, there is not much clinical record here.[7]

---

[5] Tr. 730.

[6] *Id.*

[7] Tr. 726. The court omitted Dr. Dossett's discussion of claimant's other surgeries and treatment for anxiety, as those impairments are not at issue with regard to this claim.

Dr. Dossett also opined that claimant did not meet any of the Listings, reasoning:

> [W]hile there are definite disease states in the spine at several areas, there is not sufficient clinical information to establish that these lesions have caused or are causing significant disorders. There is a rather marked lack of clinical examination, which may be as noted by the claimant due to the fact that she has had no money to be seen by doctors, but I have to feel that if her impairments were as severe as she indicates that she would have been in emergency rooms or found some way to be treated. In any case, there is a marked lack of clinical information.[8]

When asked to identify the functional limitations resulting from claimant's impairments, Dr. Dossett stated:

> Again, there is a lack of information on which to base the answer to this question; however, Dr. Lowry stated "her ability to sit, stand, walk, lift, carry, bend, squat and kneel may be somewhat impaired by spine pain complaint. Her ability to reach, see, hear, speak, understand, and manipulate small objects is unimpaired." This would appear to be correct from the record available. In my opinion, she probably would have difficulty walking as much as four hours or standing as much as four hours in a work day, but sitting should not be severely or significantly limited. Reaching and handling should not be significantly impaired, except possibly to a slight degree with the left upper extremity. Stooping, climbing, crawling, or crouching might well be significantly limited. There really is a lack of clinical findings to justify a conclusion of severe limitation.[9]

Dr. Dossett also testified during the second administrative hearing, which was conducted on September 6, 2012.[10] He acknowledged that plaintiff suffered from medical conditions that were capable of causing pain, but he nonetheless concluded

---

[8] Tr. 727 (alteration supplied).
[9] Tr. 728.
[10] *See* Tr. 32.

that the objective medical records that he reviewed did not indicate a disabling level of symptoms as alleged by claimant.[11]  However, Dr. Dossett had not reviewed Dr. Anderson's report, because it was not included in the records that had been provided to him.[12]  Dr. Dossett acknowledged, upon questioning by claimant's attorney, that a physician who has examined a patient normally is in a better position to give an opinion about that patient's medical condition than a physician who had not examined the patient, and that, due to Dr. Anderson's field of specialty, his findings would have been "very pertinent."[13]

The ALJ recognized that Dr. Dossett had not reviewed Dr. Anderson's records or opinion.  Even so, the ALJ assigned great weight to Dr. Dossett's opinion, reasoning that it was

> consistent with the ability to perform at least sedentary work.  For example, Dr. Dossett found that the claimant would be capable of sitting without limitation throughout the day and would be able to stand and walk for up to four hours each in an eight hour day.  He further concluded that there was a lack of clinical findings to justify a conclusion of severe limitation.  Dr. Dossett's opinions are clearly consistent with the records as a whole and specifically the consistently normal physical examination findings during visits to her doctors.[14]

Claimant asserts that the ALJ erred by affording more weight to Dr. Dossett's opinion than to Dr. Anderson's, because Dr. Dossett, unlike Dr. Anderson, never

---

[11] Tr. 46-55.
[12] Tr. 46.
[13] Tr. 54.
[14] Tr. 21.

7

examined claimant. Claimant makes much of Dr. Dossett's acknowledgment during the administrative hearing that an examining physician generally is in a better position to offer an opinion about a patient's condition than a non-examining physician. But that acknowledgment does nothing but echo the general rule set forth in the regulations cited above. Despite that general rule, an ALJ *can* assign more weight to a non-examining physician's assessment *if* that assessment is more consistent with the record as a whole. That is what the ALJ did here, and his conclusion was supported by substantial evidence.

It is true that MRI results indicated that claimant suffered from various abnormalities of the spine. A February 28, 2011 MRI revealed disc space narrowing at C5-C6 with disc extrusion, slight posterior central protrusion and annular tear at T7-T8, very small far right paracentral protruded disc at L2-L3, mild disc bulging with no protruded disc at L4-L5, and mild to moderate broad-based disc bulging at L5-S1.[15] An August 22, 2011 MRI revealed a disc protrusion at T7-T8, a disc herniation at C5-C6, broad-based disc protrusion at L5-S1, and small disc herniation at L2-L3.[16] Dr. Scholl, claimant's treating orthopedic physician, stated on September 19, 2011, that one of her disc protrusions caused cord compression.[17] A February 9, 2012 MRI

---

[15] Tr. 505-510.

[16] Tr. 501-04.

[17] Tr. 515. Dr. Scholl stated that the cord compression was caused by "sizable central disc protrusion noted at 4-5." *Id.* It is unclear whether that was a reference to claimant's lumbar, thoracic, or cervical spine.

revealed:

> At L5-S1 there is broad-based disc bulge. There is no disc herniation or spinal stenosis. The neural foramen are narrowed bilaterally. There is bilateral facet hypertrophy and degenerative change. There is disc desiccation. There [are] endplate degenerative changes.
>
> At L4-L5 there is broad-based disc bulge. There is disc dessication. There is bilateral facet hypertrophy. The neural foramen are slightly narrowed bilaterally.[18]

It is apparent from these objective findings that claimant suffers from impairments of her spine. Even so, the mere existence of those impairments does not necessarily mean that claimant is disabled. Instead, the relevant consideration is the effect of claimant's impairment, or combination of impairments, on her ability to perform substantial gainful work activities. *See* 20 C.F.R. § 404.1505 (defining a disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). *See also Bowen v. Yuckert,* 482 U.S. 137, 146 (1987) ("The [Social Security] Act 'defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.'") (quoting *Heckler v. Campbell,* 461 U.S. 458, 459-60 (1983)).

There is little evidence of significant *functional* limitations caused by claimant's

---

[18] Tr. 705 (alteration supplied).

spinal problems. The most significant clinical findings were from Dr. Scholl's July 23, 2012 examination, when he noted limited cervical range of motion, limited lumbar flexion and extension, and a positive straight leg raise test on the left with reproduction of pain down that leg.[19] Dr. Dossett addressed the positive straight leg raise test, but he did not find it to be particularly significant because it was the only serious neurological finding in the record. Indeed, he stated that, even considering the straight leg raise test, claimant's allegations of severe, disabling pain were more severe than should be expected from a review of the medical evidence.[20] The remainder of the clinical findings are relatively unremarkable, reflecting normal gait, good muscle strength, intact sensation, and good, if not full, range of motion.[21]

In summary, the ALJ was entitled by law to credit Dr. Dossett's opinion over Dr. Anderson's, and his decision to do so was supported by substantial evidence.

**B.    Grids**

The ALJ found that claimant had the residual functional capacity to perform a full range of work at the sedentary exertional level.[22] Because claimant did not have any additional, non-exertional impairments, the ALJ found claimant to be not disabled

---

[19] Tr. 741.
[20] Tr. 52-53.
[21] *See* Tr. 460-62, 464, 468-69, 514, 517, 712, 735, 738, 746.
[22] Tr. 15.

under Medical-Vocational Rule 201.21,[23] which mandates such a finding for a younger individual age 45-49, who has a high school education or more, who has no transferrable skills from her skilled or semi-skilled background, and who is limited to sedentary work as a result of severe medically determinable impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.21.

Claimant argues that the ALJ should have considered her pain and hand numbness to be additional, non-exertional impairments that render her unable to perform a full range of sedentary work, and that the ALJ consequently was obligated to present a hypothetical question to the vocational expert to determine whether there were jobs available in significant numbers in the national economy that claimant could perform. Contrary to claimant's suggestion, just because the ALJ found that claimant was able to perform a full range of sedentary work does not mean that he did not consider claimant's non-exertional impairments. To the contrary, the administrative opinion reflects that the ALJ *did* thoroughly consider claimant's complaints of pain and other subjective symptoms, and he accommodated claimant's symptoms by limiting her to only sedentary work. The ALJ acknowledged that claimant's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, but he nonetheless found that claimant's statements concerning

---

[23] Tr. 22 ("Because the claimant has the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.21.").

the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with a residual functional capacity to perform a full range of sedentary work.[24]  That decision was supported by substantial evidence.

**C.     Conclusion and Order**

Consistent with the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.  Costs are taxed against claimant.  The Clerk is directed to close this file.

DONE this 17th day of December, 2013.

/s/ Lynwood Smith
United States District Judge

---

[24] Tr. 17.